# THE STATE OF IOWA;

DUBUQUE, JULY TERM, A. D. 1850,

In the fourth year of the State.

---

PRESENT:

HON. JOSEPH WILLIAMS,  CHIEF JUSTICE.
" JOHN F. KINNEY, } JUDGES.
" GEORGE GREENE, }

---

## BURLERSON v. TEEPLE et al.

A fence built upon public land even by mistake, passes with the freehold to the purchaser from the government; and if such fence is detached from the realty by a wrong doer the purchaser's right to it is not divested.

A duplicate receipt or certificate from the receiver or register of a land office, is made by statute *prima facie* evidence of title, in actions of trespass, right, &c.

## Error to Jackson District Court.

*Opinion by* KINNEY, J.   Burlerson sued the defendants in error before a justice of the peace, in an action of trespass for entering upon his premises and carrying off one

hundred and seventy five rods of rail fence, and for taking away five thousand rails, to the damage of the plaintiff of one hundred dollars. The defendants recovered a verdict, and the plaintiff appealed. Upon the trial in the district court, the plaintiff gave in evidence the original duplicate receipt from the register of the land office bearing date the seventh day of January, 1850, as evidence of title and possession of the *locus in quo.* The plaintiff also proved, that the fence was standing on the premises at the time of the entry, and that it was a stake and rider fence, and standing until the day before the rails were removed. The testimony also showed, that the rails were in piles when the defendant took them, and did not show, that the defendant meddled with the rails while in the fence.

The testimony tended to show that the fence was on the premises of the plaintiff from ten to twenty rods distant from the south line of Burlerson's land. That the fence was put there by defendants, some seven years before the commencement of the suit, and at that time they supposed it was on the line between the *locus in quo* and their own land, also that the *locus in quo* at the time the fence was built, was government land, and there was no evidence that Burlerson ever claimed the premises previous to his entry. The defendants among other things, asked the court to instruct the jury, that if the jury believe that the rails were originally the property of the defendants, the plaintiff cannot recover unless there is evidence that they touched the rails in the fence, which was given by the court, and excepted to by the plaintiff. The court also charged, that, if the jury believed from the evidence that the fence, of which these rails were made, was made by the defendants, supposing they were on the line of their own land, that if it turned out that they were on the land of the plaintiff or which the plaintiff purchased, the defendants had a right to go and take them as their own, without being liable to an action of trespass to Burlerson, notwithstanding the general principle of law that whoever

owns the land owns the houses, fences, and everything upon it. To which charge the plaintiff excepted.

The plaintiff asked the court to instruct the jury, that if the jury find that the fence stood some fifteen rods from the north line of plaintiff's land, that he will be entitled to the fair value of the rails, even though the defendants may have supposed at the time they built the fence it was on the south line, which instruction the court refused. Whereupon the plaintiff excepted, &c. This constitutes the testimony and material part of the instructions given and refused as set out in the bill of exceptions, and upon which the jury found a verdict in favor of the defendants. Giving the instructions asked by the defendants, and refusing those of the plaintiff are assigned for error. The question presented by the evidence and the instructions, when narrowed down is simply this; did Burlerson by his entry of the land acquire title to the fence upon it, although that fence was placed there by the defendants through mistake supposing at the time it was made, to be upon the line of their own land, and put there for the purpose of a line fence. The court instructed the jury that the defendants had a right to remove the rails. This was error. Nor is it material whether the rails at the time they were removed were in a fence or in piles. The testimony shows that at the time the land was entered by Burlerson, the fence was standing, and as such it was attached to, and constituted part of the freehold, and became the property of the plaintiff as much as a house or any other permanent fixture upon the land. "It is a general principle that all permanent buildings follow the tenure of the soil on which they are erected. The fence which encloses a field is within the doctrine. It is necessary for the use and occupation of the ground, and cannot be removed without injury to the freehold. On alienation it passes with the soil." *Seymour* v. *Watson*, 5 Blackf. 555; 4 Kent Com. 342; 3 Bacon Abt. 63.

Burlerson having become the owner of all the improvements, by virtue of his purchase, the act of a wrong doer

Burlerson *v.* Teeple.

in detaching from the realty the fence, would not divest him of his title to it.

By our statute the duplicate receipt of the receiver or the certificates of the register, is *prima facie* evidence of title or the right of possession in any action of trespass *quare clausum fregit*, action of right, or other action of law or equity, and such certificate or receipt is to have the same effect in law in establishing possession, as a deed of conveyance or a patent. *Rev. Stat.* p. 387, § 1.

The plaintiff then upon introducing his register's receipt exhibited for the purpose of maintaining the action, a good title to the land upon which the fence was located and consequently a right to have and enjoy all the fencing upon the land covered by the register's receipt. Nor would the fact of the defendant's having made rails and erected the fence upon the land supposed to be their own, but which upon survey is found to belong to another change the rights of the parties. Although in a new country like Iowa where claims are made and fences built, in many instances before the land is surveyed, the principle of law, that where a man enters land, he enters all the improvements upon it, may and often will operate oppressively. Still a doctrine so well settled in the books, cannot be made to yield to particular emergencies. The rule applies with rigor to those who honestly supposed they were building a fence upon their own land, which however turns out upon survey to have been government land. But the principle involved in this case has been well settled by the authorities. In the case of *Goodrich* v. *Jones*, 2 Hill 142, it was held that fencing materials on a farm, which had been used as part of the fence, but temporarily detached without any intention of diverting them from their use as such, were a part of the freehold and passed by a conveyance of the farm to the purchaser.

In the case of *Blair* v. *Worley*, 1 Scam 173, although there was a statute giving the right to remove fences made by mistake upon the land of others, yet the court decide that the statute has no relation to a case where a

68

fence is erected upon lands of the United States or of the State.

The court also decide that the purchaser of land from the government of the United States acquires all the improvements made upon it anterior to his purchase. In that case Worley erected a fence upon certain public lands. Blair afterwards purchased the same, and took and removed the fence. Worley sued him in trespass. It was claimed that as Worley erected the fence on the tract described, through *mistake* believing it to be on the adjoining tract of which he was the proprietor, he was entitled to the rails. This position was sustained by the court below, but the decision was reversed by the supreme court.

A case entirely analagous to the one at bar is found in *Seymour* v. *Watson*, 5 Blackf. 555. The parties were proprietors of adjoining fields. The defendants purchased the land of the United States and before his lines were run, and while plaintiff's land was vacant, inclosed his field with a rail fence made with his own rails, and in doing so he placed a part of the fence on the land of the *United States* which the plaintiff afterwards purchased. The defendant moved the fence from the land of the plaintiff to his own land. The plaintiff sued and recovered. The court say "that the defendant having placed the fence in question on the land of another by mistake, does not alter the matter; it was no less a part of the freehold for that reason. Being the property of the United States, in consequence of its annexation to the soil it passed to the plaintiff by virtue of his purchase of the land on which it stood."

As these authorities are not questioned, they must be decisive of the case before us. The authority cited by counsel for defendant in error, in case of *Wincher* v. *Shrewsbury*, found in 2 Scam. 283, is not in point. In that case the plaintiff had made from timber growing on public land a quantity of rails and left them piled upon the land. The defendant afterwards purchased the land of the government, and converted the rails to his own use.

It. was held that 'they did not pass with the land. The court decide that as the trespass was committed anterior to the purchase, that the government was entitled to an action either in trespass or trover and that the rails when not put into a fence nor intended for that purpose, would not pass by alienation.

From the general and well established principle of law that a fence attaches to, and becomes a part of the freehold when erected, and follows the tenure of the soil, (and although built upon the land of another by mistake the rule remains the same) it follows as a necessary result that the plaintiff in this case when he purchased the land upon which the fence was situated became the owner thereof, and the defendants were trespassers in removing it, or the rails which composed the fence at the time of the purchase.

Judgment reversed.

*P. & J. M. Smith*, for plaintiff in error.

*L. Clark*, for defendants.